[Cite as *Meyers v. Chiaverini*, 2016-Ohio-3498.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

WILLIAM R. MEYERS,

    PLAINTIFF-APPELLEE,               CASE NO. 7-16-01

    v.

JASCHA CHIAVERINI,                   O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Napoleon Municipal Court

Trial Court No. 15CVG0431

Judgment Affirmed in Part and Reversed in Part

Date of Decision:   June 20, 2016

---

APPEARANCES:

    *George C. Rogers* for Appellant

    *Albert L. Potter, II* for Appellee

**SHAW, P.J.**

{¶1} Defendant-appellant Jascha Chiaverini ("Chiaverini") brings this appeal from the judgment of the Napoleon Municipal Court of Henry County, Ohio, granting the complaint for forcible entry and detainer ("FED") filed by plaintiff-appellee William Meyers ("Meyers"). Chiaverini also appeals the municipal court's judgment dismissing his counterclaims for abuse of process and frivolous conduct against Meyers, and Chiaverini's third-party complaint against Meyers' attorney for abuse of process and frivolous conduct.

### I. Relevant Facts and Procedural History

{¶2} Meyers is the titled owner of property at "10-351 County Road O-3," Napoleon, Henry County, Ohio. (Doc. No. 1). The property consists of approximately three acres and contains "a small two bedroom farmhouse," two granaries, a "large old barn" and "a half-moon shaped building about 70 feet long." (Aug. 26, 2015, Tr. at 33). On October 10, 2011, Meyers entered into a Land Installment Contract with LJ Farms, LLC ("LJ Farms"), for LJ Farms to purchase the subject property. According to the record, when LJ Farms "was created the LJ stood for Lynette Smith and Jascha Chiaverini." (Oct. 14, 2015, Tr. at 9). Meyers claimed that at the time the Land Installment Contract was entered into, Chiaverini was a "principal" of LJ Farms.

{¶3} The Land Installment Contract was executed between Meyers and attorney George C. Rogers on behalf of LJ Farms. Rogers was listed as the "V.P."

for LJ Farms.[1]  According to the record, attorney Rogers drafted the contract.[2] The Land Installment Contract called for a $60,000 purchase price for the subject property and stated that LJ Farms would be credited with $10,000 already paid. LJ Farms was then required to pay $650 per month for five years, and at the end of five years, LJ Farms would make a final lump-sum payment of $16,000.

{¶4} According to Meyers, LJ Farms defaulted on the Land Installment Contract by failing to pay any of the required $650 monthly payments.  As a result, Meyers filed suit in Henry County Common Pleas Court case *Meyers v. LJ Farms, LLC*, No. 2012 CV 0096, claiming LJ Farms had forfeited the Land Installment Contract.  LJ Farms countersued, seeking specific performance of the Land Installment Contract.

{¶5} On February 6, 2015, the Henry County Common Pleas Court filed an entry granting partial summary judgment to Meyers on his claim that LJ Farms had forfeited the Land Installment Contract.  The entry stated specifically that "LJ Farms LLC[']s interest in the Land Installment Contract * * * is hereby terminated."[3]  (Doc. No. 4).  The entry also denied LJ Farms' claim for summary

---

[1] Lynette Smith was apparently the president of LJ Farms at the time the Land Installment Contract was made.

[2] Rogers has been Chiaverini's attorney throughout the pendency of the case *sub judice*.

[3] The Henry County Common Pleas Court found that "[u]nder the plain reading of this * * * [c]ontract the Defendant was in default for at least 7 or 8 months prior to the initiation of the forfeiture proceedings." (Doc. No. 4).  We acknowledge that the Henry County Common Pleas Court's judgment related to this issue has not yet been reduced to a final appealable judgment.

judgment for specific performance of the Land Installment Contract.[4] In addition, the entry stated that it was not a final appealable order as the issue of damages remained to be litigated.

{¶6} According to our record, on June 17, 2015, Meyers filed an amended complaint in the Henry County Common Pleas Court case seeking, *inter alia*, FED against LJ Farms since LJ Farms interest in the Land Installment Contract had been terminated. The amended complaint also asserted a claim against Chiaverini individually, claiming that Chiaverini took possession, and continued to unlawfully possess, Meyers' "Bobcat Model 853" which had a purported present value of $15,000. As far as the record before us indicates, the litigation in the Henry County Common Pleas Court remained pending when Meyers filed this current action in the Napoleon Municipal Court.[5]

{¶7} On August 6, 2015, while the Henry County Common Pleas Court litigation was pending, Meyers filed a complaint against Chiaverini individually in the Napoleon Municipal Court alleging that Chiaverini was unlawfully and forcibly detaining the subject property. The complaint in this case did not list LJ Farms as a defendant. According to the complaint, subsequent to entering into the

---

[4] In analyzing the issues, the Henry County Common Pleas Court noted that there were at least five "drafting deficiencies" with the Land Installment Contract itself including, *inter alia*, no date of the contract and a failure to state any encumbrances on the property. (Doc. No. 4). The common pleas court reasoned that LJ Farms could not argue that drafting deficiencies in the Land Installment Contract excused LJ Farms' lack of performance because the contract was drafted by an officer of LJ Farms.

[5] Throughout this litigation the parties' filed, presented, or attached as exhibits several documents from the pending Henry County Common Pleas Court case including the entry on partial summary judgment, Meyers' amended complaint, and a later journal entry wherein the common pleas court stated that it had not ruled on LJ Farms' possessory right to the subject property, which will be discussed *infra*.

land contract, Chiaverini took possession of the subject property, but later abandoned it,[6] leaving behind equipment and miscellaneous personal possessions. Meyers later described the subject property as "in total disrepair." (Aug. 26, 2015, Tr. at 14). Meyers stated that the property was " quite a mess" due to the fact that Chiaverini had moved "tons and tons of materials and building materials and equipment and trailers and junk and campers and all kinds of things onto the property and [Chiaverini] has refused to remove them." (Aug. 26, 2015, Tr. at 7).

{¶8} The complaint alleged that Chiaverini was an occupier of the subject property with no legal right due to the Henry County Common Pleas Court's ruling declaring LJ Farms' interest in the land contract terminated. The complaint also alleged that Meyers had served Chiaverini notice in writing to vacate the premises, and that Chiaverini unlawfully and forcibly detained possession of the premises. In a separate cause of action, the complaint alleged that Chiaverini was liable to Meyers for damages, which included, *inter alia*, payment for reasonable rental value.

{¶9} On August 26, 2015, the Napoleon Municipal Court held a hearing on the FED action. At the hearing, Meyers testified in his case-in-chief that he owned the subject property. A copy of Meyers' warranty deed was entered into evidence. Meyers testified that he entered into a land installment contract for LJ Farms to purchase the subject property on October 10, 2011. Meyers testified that at the

---

[6] There are indications in the record that L&J Farms sublet the property in 2014.

-5-

time the contract was entered into, Chiaverini was involved in the negotiations but Chiaverini did not sign the contract.

{¶10} Meyers testified that Chiaverini had "abandoned" the property, but he had left a number of personal possessions there. (Tr. at 6). Meyers testified that he had received notices from the township and the prosecutor's office to clean up the subject property or face legal action. Copies of two of those letters providing Meyers a deadline to clean up the property or face legal action were introduced into evidence.

{¶11} Meyers testified that Chiaverini was preventing him cleaning up the property to comply with the order despite the fact that Chiaverini was not living on the property and had no legal right to be there. Meyers testified that Chiaverini notified the sheriff

> **every time somebody goes out to mow the lawn or do anything at the property to maintain it or clean it up and it's gotten to be very difficult with the Sheriff Department, they understand the situation and need clarification on this immediately so that I can get it cleaned up. I have the crew, the equipment to clean it up immediately; I just need to be able to get on the property to do it.**

(Tr. at 8).

{¶12} Meyers testified that Chiaverini was not a tenant, that he had no lease agreement with Chiaverini, that Chiaverini had not lived there for over a year, and

that "not a penny" had ever been paid on the contract.[7] Meyers testified that he served a three-day notice to leave on Chiaverini, but Chiaverini was still occupying the property.

{¶13} Meyers also testified regarding the order that had been entered in the Henry County Common Pleas Court between Meyers and LJ Farms. A copy of the entry was introduced into evidence, which indicated that LJ Farms' interest in the land contract had been terminated. On cross-examination, Meyers was asked if he was aware that there was an appeal made from the Henry County Common Pleas Court entry granting Meyers' partial summary judgment, and whether he was aware that the appeal was dismissed due to a lack of a final appealable order. Meyers answered in the affirmative.

{¶14} On cross-examination Meyers was also asked if LJ Farms was in possession of the premises and whether Meyers was asking LJ Farms to leave. Meyers answered the question, though his answer, which follows, provided little clarity.

> **No, no, LJ Farms is not, we did that as just a backup because we felt so that would be another ploy to take more time to get your junk off the property, period. So we filed this one so that we can have another hearing on this later, if necessary, if the judge finds we have to deal with LJ Farms, but LJ Farms is not there, it is Jascha Chiaverini[.]**

---

[7] Meyers testimony is accurate to the extent that it appears that none of the monthly payments were ever timely made by Chiaverini and accepted by Meyers. However, it is undisputed that LJ Farms was credited with $10,000 already paid pursuant to the original Land Installment Contract.

(Tr. at 12). Meyers then elaborated, testifying that "all the things that are at the farm right now belong to [Chiaverini]." (*Id*. at 13). Meyers testified that it was his understanding that "nothing in the farm house belongs to [LJ Farms]; it all belonged to a tenant that you sublet to and now won't let on the property[.]" (Tr. at 16). Meyers testified that if LJ Farms has "anything there that belongs to them, I have no idea." (Tr. at 13).

{¶15} Meyers was also repeatedly asked on cross-examination about LJ Farms and whether there was litigation pending between LJ Farms and Meyers and whether LJ Farms had ever made a payment on the Land Installment Contract. The municipal court made clear that LJ Farms is not a party to *this* action. (Tr. at 19).

{¶16} Meyers testified that the last time he was on the subject property was in July of 2015 and that at that time Chiaverini blocked the driveway so that "renters" and Chiaverini's "girlfriend"[8] could not get their belongings that were on the property. (Tr. at 24). Meyers testified that he had also been on the property in February of 2015 and at that time he learned that nobody was living in the residence. Meyers testified that when he was on the property in February of 2015 there was spoiled milk in the refrigerator dated from September of the prior year and there was rotten, raw meat he had to dispose of. Meyers testified that he believed September of the prior year, 2014, was the last time anyone had been

---

[8] We assume Meyers meant Chiaverini's ex-girlfriend.

living in the residence. Meyers testified that he had the water turned off to winterize the residence and had the electricity taken out of LJ Farms' name.

{¶17} Meyers testified that when he had a mechanic go out and winterize the home he also had the locks changed. However, Meyers testified that every time he had someone go out to the property to do something police had been called by Chiaverini and threats had been made to his people. (Tr. at 28). At the conclusion of Meyers' testimony, he rested his case.

{¶18} Chiaverini then took the stand in his own defense. Chiaverini testified that since October of 2011 LJ Farms had continuously been in possession of the farm house portion of the subject property. Chiaverini testified that he personally was "maintaining the property on behalf of LJ Farms." (Tr. at 43).

{¶19} Chiaverini testified that the electric payment was current when Meyers had the electricity taken out of LJ Farms' name. Chiaverini testified that Meyers changed the locks on the residence and that Chiaverini then notified the sheriff that the locks were unlawfully changed so Chiaverini changed them back. Chiaverini testified that Meyers then changed the locks two more times and Chiaverini notified the sheriff each time the locks were changed.

{¶20} Chiaverini testified that he had clothes and personal belongings at the subject property, including a refrigerator, stove, microwave, couch, and a washer and dryer. In addition, Chiaverini testified that he had made some improvements to the property. Chiaverini testified that as far as he was concerned, LJ Farms,

under his management, had never given up possession or control of the property since the signing of the Land Installment Contract. (Tr. at 47). At the conclusion of the testimony the municipal court took the matter under advisement.

{¶21} On August 26, 2015, the municipal court filed a judgment entry on Meyers' FED claim against Chiaverini. In its entry, the municipal court determined that it had jurisdiction to hear the FED action because the FED action was strictly possessory in nature and was merely cumulative to any other remedy Meyers may have had related to the title of the property. The municipal court reasoned that even though there was a case pending concerning the subject property in the Henry County Common Pleas Court, Chiaverini was not named as a defendant in that case and the FED action only related to the present possession of the premises, not the title, so the separate case related to the issue of title did not bar the FED action in this case.[9] In doing so, the municipal court cited the Ohio Supreme Court decisions in *State ex. rel Carpenter v. Warren Municipal Court*, 61 Ohio St.2d 208 (1980), and *State ex rel. Weiss v. Hoover, Judge, et al.*, 84 Ohio St.3d 530 (1999). Relying on those cases, the municipal court in this case stated that, "the Ohio Supreme Court granted writs of procedendo ordering those Municipal Courts to proceed with [FED] actions when title to such property is drawn into question in collateral actions in a Common Pleas Court." (Doc. No. 5).

---

[9] The record indicates that the municipal court judge in this case was not likely aware that Meyers had filed an amended complaint in the Henry County Common Pleas Court case making an FED claim against LJ Farms and adding Chiaverini as a defendant, albeit on the issue of Chiaverini wrongfully retaining Meyers' "Bobcat."

The municipal court thus determined that it did have jurisdiction over the narrow issue of the FED claim against Chiaverini individually.

{¶22} The municipal court then determined that Meyers was the owner of the premises in question, that Chiaverini was in possession of the premises based on his personal property and his repeated notification of law enforcement when other individuals, including Meyers and his agents, attempted to enter the premises. The municipal court stated that Chiaverini "claims the right to possession of the premises because he is the manager and/or maintains the property for LJ Farms, LLC. There is no other agreement, written or oral, allowing [Chiaverini] to possess the premises." (*Id.*) The municipal court stated that although LJ Farms may have at one time had the right to possession of the premises, that contract was terminated by the Henry County Common Pleas Court. The municipal court reasoned that, "[b]ecause L&J Farms, LLC. has no right to possession of the premises, the Defendant also has no right to possession as the manager or maintainer of and for the LLC." (*Id.*)

{¶23} The municipal court stated that it was mindful of the fact that the Henry County Common Pleas Court's judgment was not yet a final order, stating, however, that there was urgency to this case as Meyers had been threatened with legal action by both Henry County and Harrison Township as a result of the condition of the property. Based on these findings the municipal court granted Meyers' claim for FED.

{¶24} On August 28, 2015, Chiaverini filed a "Motion to Vacate Judgment Entry of August 26, 2015," pursuant to Civ.R. 60(B), arguing that "the jurisdictional-priority rule" prevented the municipal court from exercising jurisdiction in this case.[10] Chiaverini's motion alleged that Meyers had joined Chiaverini as a defendant alongside LJ Farms in the Henry County Common Pleas Court case. Chiaverini attached Meyers' second amended complaint from the Henry County Common Pleas Court dated June 17, 2015, which alleged, *inter alia*, that Chiaverini wrongfully possessed Meyers' "Bobcat model 853" and that LJ Farms unlawfully and forcibly detained possession of the subject property from Meyers. Chiaverini argued that the LJ Farms was in possession of the subject property and was the proper party to this action as Chiaverini was only utilizing the residence pursuant to LJ Farms' possession. Chiaverini argued that as there

---

[10] In *State ex rel. Dunlap v. Sarko*, 135 Ohio St.3d 171, 173-74, 2013-Ohio-67, the Supreme Court of Ohio explained the jurisdictional-priority rule as follows.

> **Under the jurisdictional-priority rule, however, " '[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.' "** *State ex rel. Racing Guild of Ohio v. Morgan,* **17 Ohio St.3d 54, 56 (1985), quoting** *State ex rel. Phillips v. Polcar,* **50 Ohio St.2d 279 (1977), syllabus.**

> **To be sure, it is a condition of the jurisdictional-priority rule that the claims and parties be the same in both cases, so "[i]f the second case is not for the same cause of action, nor between the same parties, the former suit will not prevent the latter."** *See State ex rel. Judson v. Spahr,* **33 Ohio St.3d 111, 113 (1987).**

> **Nevertheless, we have also recognized that the jurisdictional-priority rule can apply even when the causes of action and relief requested are not exactly the same, as long as the actions present part of the same "whole issue."** *State ex rel. Otten v. Henderson,* **129 Ohio St.3d 453, 2011-Ohio-4082, ¶ 29.**

*Sarko* at ¶¶ 9-11.

was already a case pending in the Henry County Common Pleas Court related to LJ Farms' possession, and thus Chiaverini's possession, the common pleas court case took jurisdictional priority.

{¶25} On August 31, 2015, Meyers filed a response to Chiaverini's "Motion to Vacate Judgment Entry." In his response, Meyers argued that the FED claim against Chiaverini individually in this case was not the same action as that which was pending in the Henry County Common Pleas Court against Chiaverini, which was a declatory judgment related to the Bobcat and an FED claim against LJ Farms. Meyers asserted that the jurisdictional priority rule thus did not apply. (Doc. No. 7).

{¶26} On August 31, 2015, the municipal court filed an entry denying Chiaverini's motion to vacate, finding that based on the caselaw the court had cited previously, "FED actions in municipal courts can occur simultaneously with actions concerning the same realty in common pleas courts." (Doc. No. 8).

{¶27} Also on August 31, 2015, the Henry County Common Pleas Court filed an "Order" to "clarify the effect of [its] February 6, 2015 entry."[11] The document contained the following provisions.

> 1. **In the February 6, 2015 entry the Court has recognized that L&J Farms, LLC held a right of possession to the real property covered by the Land Installment Contract.**

---

[11] It appears that the Napoleon Municipal Court was not made aware of the Henry County Common Pleas Court's clarification "Order" until the "Order" was presented at the October 14, 2015 hearing. We present it here for its proper chronological context.

**2. The February 6, 2015 Entry of the Court was an interlocutory order, not a final order. The Summary Judgment only granted forfeiture of the land installment contract which the Court granted in favor of the Plaintiff, William Meyers, against L&J Farms, LLC.**

**3. A determination of an order of possession was beyond the scope of the Summary Judgment.**

**4. There is currently filed a Forcible Entry and Detention action with a hearing set for September 10, 2015 at 2:00 p.m. filed by William Meyers against L&J Farms, LLC.**

(Doc. No. 20).

**{¶28}** On September 4, 2015, Chiaverini filed an "Answer and Counterclaim with Jury Demand." (Doc. No. 11). Chiaverini sought to deny the FED claim and damages despite the fact that the municipal court ruled on the FED action already and denied his 60(B) motion. In his answer Chiaverini asserted a number of defenses, including that the Napoleon Municipal Court did not have jurisdiction over the matter, and that Chiaverini was only utilizing the subject property as a residence pursuant to managing it for LJ Farms. In his counterclaim, Chiaverini asserted claims for abuse of process and frivolous conduct against Meyers. Chiaverini also filed a third-party complaint against Meyers' attorney Albert Potter for abuse of process and frivolous conduct. (Doc. No. 11). Chiaverini requested that he be awarded $10,000 in compensatory damages and $30,000 in attorney's fees.

{¶29} On September 15, 2015, Meyers filed an answer to the counterclaim denying any frivolous conduct or abuse of process. (Doc. No. 16). In fact, Meyers contended that the filing of Chiaverini's counterclaim was frivolous and entitled him to sanctions against Chiaverini and his attorney.

{¶30} On September 15, 2015, Meyers' attorney filed a response to the claims against him, denying the claims and asserting multiple defenses, and also contending that Chiaverini engaged in frivolous conduct. (Doc. No. 17).

{¶31} On October 14, 2015, a hearing was held. At the hearing, which just involved the attorneys presenting arguments to the court regarding the pending motions and the pending litigation, the court stated that Chiaverini had no legal standing to be on the subject property and that was why it granted the FED. The court was made aware of the August 31, 2015, clarification "Order" filed in the Henry County Common Pleas Court case, and the parties argued over whether attorney Rogers had a conflict of interest in this case and thus could not represent Chiaverini.

{¶32} On December 23, 2015, the municipal court filed a judgment entry determining the remaining claims pending in the case, including Meyers' second cause of action for damages related to the FED and Chiaverini's counterclaim and third-party complaint for frivolous conduct and abuse of process. In its entry the municipal court determined that it only had jurisdiction over the narrow issue of the FED action against Chiaverini. The municipal court determined that it did not

have jurisdiction over the remaining issues in this case due to the pending common pleas court case, reasoning as follows.

> **As this Court stated in its Judgment Entry dated August 26, 2015, this Court has jurisdiction over this case on the very narrow issue of forcible entry and detention. With that issue decided, this Court finds that it does not have jurisdiction over the remaining claims in this case due to the prior action filed in the Henry County Court of Common Pleas, Case No. 12CV0096 which involves the same property and parties at issue in this case. \* \* \***
>
> **Having found that it does not have jurisdiction over the remaining claims in this case, the Court must decide whether the Plaintiff's second cause of action and Defendant's Counterclaim and Third Party Complain[t] must be transferred to the Henry County Court of Common Pleas or dismissed.**
>
> **\* \* \* In the case at bar, the Defendant's Third Party Complaint exceeds the monetary jurisdiction of this Court. However, Plaintiff's second cause of action, Defendant's Counterclaim and Defendant's Third Party Complaint all raise issues which the municipal court is wholly without jurisdiction to hear, regardless of the amount of damages sought. All issues between the parties, with the exception of the FED action, did not belong in this Court. They belonged in the previously and currently pending Henry County Common Pleas Court case. Therefore, under the mandatory requirements of Civ.R. 12(H)(3), this Court must dismiss the remaining actions.**

(Doc. No. 30). Based on its reasoning, the Napoleon Municipal Court dismissed all remaining claims of the parties.

{¶33} It is from this judgment that Chiaverini appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE NAPOLEON MUNICIPAL COURT ERRED IN ITS JUDGMENT ENTRY OF AUG. 2[6], 2015 AS IT LACKED JURISDICTION OVER A FED ACTION BROUGHT BY A PROPERTY OWNER 1.) AGAINST A TENANT MANAGER OF AN LLC THAT HAD A LAND CONTRACT INTEREST IN POSSESSION OF THE PREMISES OVER WHICH THE COMMON PLEAS COURT HAD ALREADY ASSUMED JURISDICTION ON A CLAIM BY THE PROPERTY OWNER UNDER R.C. 5313.10, AND 2.) WHEN THE MUNICIPAL COURT FED ACTION FAILED TO NAME THE LLC AS A PARTY IN THE MUNICIPAL COURT, AND 3.) THE STATUTORY ACTION BROUGHT IN THE COMMON PLEAS COURT WAS AN EXCLUSIVE REMEDY UNDER THE STATUTE.**

**ASSIGNMENT OF ERROR 2**
**THE NAPOLEON MUNICIPAL COURT ERRED IN ITS JUDGMENT ENTRY OF DEC. 23, 2015 IN DISMISSING MR. CHIAVERINI'S COUNTERCLAIM AND THIRD PARTY CLAIM, AS MR. CHIAVERINI'S COUNTERCLAIM AND THIRD PARTY CLAIM WERE NOT PART OF THE COMMON PLEAS COURT CASE AT THE TIME THEY WERE ASSERTED, AND THE MUNICIPAL COURT HAD JURISDICTION TO IMPOSE SANCTIONS FOR MISCONDUCT BEFORE THE COURT, AND/OR TO CERTIFY THE MATTER TO THE COMMON PLEAS COURT.**

## II.  First Assignment of Error

### a.  Introduction

**{¶34}** In Chiaverini's first assignment of error, Chiaverini argues that the issue of the right to possession of the subject property was already pending before the Henry County Common Pleas Court, and thus the Napoleon Municipal Court lacked jurisdiction over the matter.  Chiaverini also contends that R.C. 5313.08

and R.C. 5313.10[12] govern this matter due to the fact that it is a Land Installment Contract and the cited statutes created an exclusive remedy, which prevented Meyers from filing this separate action in municipal court. In addition, Chiaverini argues that LJ Farms was a necessary party to the action since Chiaverini's only right to possession of the subject property was through LJ Farms.

### b. Analysis

{¶35} At the outset of our analysis we note that in Chiaverini's brief he concedes that he has no personal right to possession of the subject property. Chiaverini states that his only right to possess the property was through LJ Farms' right to possess the property. Chiaverini states that this is precisely the reason that the litigation in Henry County Common Pleas Court takes jurisdictional priority, because that litigation would decide his right to possession of the property as manager for LJ Farms. In the alternative, Chiaverini argues that at the very least the fact that he only has a right to possess the property through LJ Farms makes LJ Farms a necessary party to this action.

---

[12] Revised Code 5313.10 reads,

> **The election of the vendor to terminate the land installment contract by an action under section 5313.07 or 5313.08 of the Revised Code is an exclusive remedy which bars further action on the contract unless the vendee has paid an amount less than the fair rental value plus deterioration or destruction of the property occasioned by the vendee's use. In such case the vendor may recover the difference between the amount paid by the vendee on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use.**

{¶36} At the FED hearing in this case, Chiaverini testified that he had personal possessions at the subject property, including a couch, a refrigerator, a washer and dryer, etc. Meyers testified that he believed the majority of equipment on the property belonged to Chiaverini individually and not to LJ Farms. Meyers also testified that he believed there were items on the premises that belonged to Chiaverini's ex-girlfriend and to people who LJ Farms had sublet the property to in late 2014. However, an itemized list, or even a broad summary, of all of the equipment on the property and who it specifically belonged to was never presented to the municipal court. Our record is simply unclear on whether Chiaverini only brought his personal property onto the subject property in his capacity as manager for LJ Farms or in a personal capacity.

{¶37} In its entry on the matter, the municipal court determined that it had limited jurisdiction related to the FED claim against Chiaverini individually, finding that it did not have jurisdiction over all of the potential issues between the parties because of the case pending in Henry County Common Pleas Court. The municipal court then attempted to determine only the FED against Chiaverini in his individual capacity. However, in its August 26, 2015, judgment entry, the Napoleon Municipal Court specifically stated that "*Because L&J Farms, LLC. has no right to possession of the premises*, the Defendant also has no right to possession as the manager or maintainer of and for the LLC." (Emphasis added.) (Doc. No. 5). The Napoleon Municipal Court thus did make a determination of

Chiaverini's right to possession of the subject property, *but only in the context of LJ Farms' right to possession of the subject property under the Land Installment Contract*, which, according to our record, was *directly at issue* in the *earlier filed* action between Meyers and LJ Farms pending in the Henry County Common Pleas Court. As this was also the only basis for eviction alleged in the FED complaint, the municipal court relied exclusively upon its finding that LJ Farms had no possessory right to the subject property under the Land Installment Contract to find that Chiaverini had no right to the subject property either personally or through LJ Farms.

{¶38} After the Napoleon Municipal Court made its ruling stating that LJ Farms had no right to possession of the premises, the Henry County Common Pleas Court filed a clarification "order" stating that the issue of LJ Farms' right to possession was yet to be determined. According to the record before us, the Henry County Common Pleas Court is entirely accurate for multiple reasons: 1) The Henry County Common Pleas Court's ruling on summary judgment terminated the land installment contract but it did not decide LJ Farms' right to possession, finding that issues of fact existed related to LJ Farms' claim for specific performance; 2) The ruling on summary judgment explicitly stated that it was not a final appealable order; and 3) The Henry County Common Pleas Court's clarification order reiterated that it had not yet determined LJ Farms' right to possession, and that it had the matter pending before it. As Chiaverini admits that

he only had a right to possession of the subject property through LJ Farms, the litigation in the Henry County Common Pleas Court would necessarily resolve Chiaverini's right to possession of the property.

{¶39} If the Henry County Common Pleas Court granted an FED against LJ Farms, Chiaverini would be compelled to leave. To any extent Chiaverini remained in a personal capacity once LJ Farms no longer had a possessory right, then Chiaverini could be personally removed in a separate action that would not be directly based on his capacity with LJ Farms. An action at *that* time could at least be based upon a final judgment entry from the common pleas court as to Chiaverini's status under the land contract instead of attempting to incorporate interlocutory rulings and documents from a pending case in common pleas court into a pending FED action in municipal court based on the same land contract. Moreover, if the Henry County Common Pleas Court *denied* the FED against LJ Farms, Chiaverini would seemingly retain some ability to possess the subject property in whatever capacity he was involved with LJ Farms, which illustrates how intertwined the two cases are.

{¶40} Thus we agree with Chiaverini that the Henry County Common Pleas Court case took jurisdictional priority as it was filed prior to the action in this case and the municipal court's decision to order an FED against Chiaverini, particularly in his capacity for LJ Farms, was error. Therefore, Chiaverini's first assignment of error is sustained.

### III. Second Assignment of Error

*a. Introduction*

**{¶41}** In Chiaverini's second assignment of error, he argues that the municipal court erred by dismissing his counterclaim and third-party complaint. Specifically, Chiaverini argues that Meyers and his attorney were aware that Chiaverini only had a right to possession of the subject property through LJ Farms and that Meyers brought the litigation against Chiaverini individually to "cause him harm, legal expense, and to unlawfully pressure him to gain advantage in their litigation with LJ Farms[.]" (Appt.'s Br. at 11-12).

*b. Analysis*

**{¶42}** After the municipal court had already granted Meyers' FED action against Chiaverini individually, Chiaverini filed an answer, a counterclaim, and a third-party complaint against Meyers and his attorney. In the counterclaim and third-party complaint, Chiaverini contended that Meyers and his attorney had engaged in frivolous conduct in filing the FED action against Chiaverini individually and that they had engaged in abuse of process.

**{¶43}** In dismissing Chiaverini's counterclaim and third-party complaint, the municipal court cited Civ.R. 12(H)(3), which reads, "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction on the subject matter, the court shall dismiss the action." The municipal court noted that the counterclaim and third-party complaint exceeded the court's monetary

jurisdiction but ultimately the municipal court determined that it lacked subject matter jurisdiction over the claims due to the pending Henry County Common Pleas Court case.

{¶44} Given the totality of the circumstances, we cannot find that the municipal court erred in this case. First, as we stated in the previous assignment of error, all of the issues in this case are so intertwined with the common pleas court action that this case did not belong in the municipal court. Second, we note the odd and extremely questionable timing of Chiaverini's counterclaims and his third-party complaint. Chiaverini did not file the counterclaim and third-party complaint until *after* the municipal court had already entered an adverse ruling to him *and* denied his Civ.R. 60(B) motion. Third, we question whether Chiaverini's counterclaim and third-party complaint even clearly state proper claims for relief, but to the extent that they do, they are related to the LJ Farms litigation in common pleas court as the claims are ultimately based solely on the allegation that "Chiaverini suffered the loss of the lawful use of the premises as a manager of said property for [LJ] Farms[.]" (Doc. No. 11). Finally, we note, as the municipal court did, that even if it *did* have subject matter jurisdiction over the issues, the amounts alleged exceeded the court's monetary jurisdiction.[13]

---

[13] If the municipal court had decided this case on the basis that the amounts simply exceeded its jurisdiction, perhaps it would have been compelled, as Chiaverini suggests, to transfer the case to common pleas court. However, the municipal court did not decide the case on this basis. Moreover, nothing prevents Chiaverini from filing his claims anew in the common pleas court.

{¶45} For these reasons we cannot find that the Napoleon Municipal Court erred in dismissing Chiaverini's counterclaims and his third-party complaint. Therefore his second assignment of error is overruled.

## IV. Conclusion

{¶46} Having found error prejudicial to Chiaverini in his first assignment of error, but finding no error in Chiaverini's second assignment of error, the first assignment of error is sustained and the second assignment of error is overruled. The judgment of the Napoleon Municipal Court is affirmed in part and reversed in part.

*Judgment Affirmed in Part*
*and Reversed in Part*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**